**WO**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Elsie Benally, et al., | No. CV-22-08100-PCT-DLR |
| Plaintiffs, | **ORDER** |
| v. | |
| Office of Navajo and Hopi Indian Relocation, | |
| Defendant. | |

Plaintiffs Elsie Benally ("Elsie"), Fern Benally ("Fern"), Lucille Benally ("Lucille"), and Norman Benally ("Norman") seek judicial review of an administrative decision by Defendant Office of Navajo and Hopi Indian Relocation ("ONHIR"), denying Plaintiffs relocation benefits under the Navajo-Hopi Settlement Act ("Settlement Act"). (Doc. 13.) Before the Court are the parties' cross-motions for summary judgment, which are fully briefed.[1] (Docs. 17, 18, 21, 22.) For the reasons that follow, Plaintiffs' motion is denied, and Defendant's cross-motion is granted.

## I.      BACKGROUND

### A.  The Settlement Act

The Settlement Act authorized a judicial partition of land previously referred to as the Joint Use Area—occupied by both Navajo and Hopi Residents—into the Navajo

---

[1] Plaintiffs' oral argument request is denied because the issues are adequately briefed, and oral argument will not assist the Court in reaching its decision. *See* Fed. R. Civ. P. 78(b); LRCiv. 7.2(f).

1    Partitioned Lands ("NPL") and the Hopi Partitioned Lands ("HPL"). Pub. L. No. 93-531,

2    88 Stat. 1712 (1974) (formerly codified as amended at 25 U.S.C. §§ 640d to 640d-31); *see*

3    *Clinton v. Babbitt*, 180 F.3d 1081, 1083–86 (9th Cir. 1999). The Settlement Act also

4    created ONHIR, an independent federal agency, to provide relocation benefits to any head

5    of a household whose household was forced to relocate because of the partition. 25 U.S.C.

6    § 640d-14(b). Plaintiffs seek these benefits.

### B.  Facts and Procedural History

8    Plaintiffs are siblings and enrolled members of the Navajo Nation. (Doc. 6 at 2–3.)

9    Each plaintiff independently filed an Application for Relocation Benefits and was denied.

10   (AR. 254, 310, 481, 410.) Plaintiffs appealed the denial of their applications. (AR. 261,

11   317, 410, 485.) Their appeals were consolidated, and a hearing was held before an

12   Independent Hearing Officer ("IHO") on February 5, 2016. (AR. 68.) On April 1, 2016,

13   the IHO issued separate "findings of Fact, Conclusions of Law and Decision" for each

14   applicant. (AR. 296, 373, 460, 530.) The IHO determined that Plaintiffs were ineligible for

15   relocation benefits because they failed to meet their burden of proving that they each were

16   residents of the HPL as of the date they became "heads of households."   (*Id.*) ONHIR

17   issued Final Agency Action for Plaintiffs on June 3, 2016. (AR. 298, 375, 462, 535.)

18   Plaintiffs initiated this action on June 3, 2022, seeking judicial review of ONHIR's denial

19   of relocation benefits. (Doc. 6.)

### II.    LEGAL STANDARD

### A.  Summary Judgment

22   In an ordinary civil case, a court may grant summary judgment where "there is no

23   genuine dispute as to any material fact and the movant is entitled to judgment as a matter

24   of law." Fed. R. Civ. P. 56(a). When a court is asked to review an administrative agency's

25   action, however, "there are no disputed facts that the district court must resolve."

26   *Occidental Eng'g Co. v. Immigr. & Naturalization Serv.*, 753 F.2d 766, 769 (9th Cir. 1985).

27   Rather, the court "must determine whether or not as a matter of law the evidence in the

28   administrative record permitted the agency to make the decision it did." *Id.* Thus, summary

judgment is "an appropriate mechanism for deciding the legal questions of whether [ONHIR] could reasonably have found the facts as it did." *Id.* at 770.

### B.  APA Standards of Review

Under the Administrative Procedure Act ("APA"), a reviewing court must uphold agency action unless it is arbitrary, capricious, an abuse of discretion, contrary to law, or unsupported by substantial evidence. 5 U.S.C. § 706(2)(A), (E); *see also Bedoni v. Navajo-Hopi Indian Relocation Comm'n*, 878 F.2d 1119, 1122 (9th Cir. 1989).

"The scope of review under the 'arbitrary and capricious standard' is narrow and a court is not to substitute its judgments for that of the agency."  *Hopi Tribe v. Navajo Tribe*, 46 F.3d 908, 914 (9th Cir. 1995). An ONHIR decision satisfies the "arbitrary and capricious" standard so long as "the agency examine[s] the relevant data and articulate[s] a satisfactory explanation for its action, including a rational connection between the facts found and the choice made." *Id.* If, however, ONHIR "entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or product of agency expertise," then the decision is arbitrary and capricious. *Motor Vehicle Mfrs. Ass'n of the U.S., Inc. v. State Farm Mut. Auto Ins. Co.*, 463 U.S. 29, 43 (1983). Moreover, a decision is arbitrary and capricious if ONHIR fails to follow its own precedent or fails to provide a sufficient explanation for doing so. *See Andrzejewski v. Fed. Aviation Admin.*, 563 F.3d 796, 799 (9th Cir. 2009).

An ONHIR decision satisfies the "substantial evidence" standard if it is supported by "such relevant evidence that a reasonable mind might accept as adequate to support the conclusion." *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). The standard requires "more than a mere scintilla but less than a preponderance" of evidence. *Orteza v. Shalala*, 50 F.3d 748, 749 (9th Cir. 1995). To determine if a decision is supported by substantial evidence, the Court reviews the entire administrative record, weighing both the evidence that supports and detracts from ONHIR's decision. *Id.*; *see also Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986). The Court's review is highly deferential.

1  *Sacora v. Thomas*, 628 F.3d 1059, 1068 (9th Cir. 2010). The IHO is responsible for

2  determining credibility, resolving conflicts in the testimony, and resolving ambiguities in

3  the record. *Magallanes*, 881 F.2d at 750. Where the evidence is susceptible to more than

4  one rational interpretation, the Court must uphold ONHIR's decision. *Orn v. Astrue*, 495

5  F.3d 625, 630 (9th Cir. 2007).

6  **C.  The Settlement Act and Associated Regulations**

7  A Navajo applicant is eligible for relocation benefits if he or she was a legal resident

8  of the HPL as of December 22, 1974, and was a head of household at that time. 25 C.F.R.

9  §§ 700.147(a), 700.69(c). The applicant bears the burden of proving residence and head of

10  household status. *Id.* § 700.147(b). Because the residency element resolves the case, the

11  Court only addresses that part of Plaintiffs' burden.

12  Generally, determining an applicant's residence "requires an examination of a

13  person's intent to reside combined with manifestations of that intent." 49 Fed. Reg. 22,278;

14  *Charles v. Off. of Navajo & Hopi Indian Relocation*, 774 Fed. Appx. 389, 390 (9th Cir.

15  2019). Manifestations of intent may include ownership of livestock, ownership of

16  improvements, grazing permits, school records, and employments record, to name a few.

17  *See* 49 Fed. Reg. 22,278.  That said, ONHIR has also recognized other methods of proving

18  residence.

19  One such method is ONHIR's "traditional, customary use area" policy. First

20  enunciated in its *Minnie Woodie* decision, ONHIR's policy holds that "the existence of a

21  traditional use area and its *continual, active and substantial use after partition*" is

22  acceptable proof of an applicant's legal residence. *Begay v. Off. of Navajo & Hopi Indian*

23  *Relocation*, 305 F. Supp. 3d 1040, 1048 (D. Ariz. 2018). ONHIR reasoned that "the

24  division of a traditional, customary use area was 'an adverse relocation outcome, even if

25  only part of the customary area was awarded to the Tribe of which [the applicant] is not a

26  member, so long as there is evidence of continuous use of the *entire* area as of the date of

27  the Act.'" *Id.* Though not expressly codified in federal law, ONHIR has since recognized

28  the concept of maintaining a "traditional use area" as a basis for residency. *Id.*

### III.   DISCUSSION

Plaintiffs make three arguments: (1) the IHO's credibility findings as to Fern and Norman are unsupported by substantial evidence; (2) the IHO's finding that Plaintiffs did not satisfy the elements of the "customary use area" policy is unsupported by substantial evidence and is arbitrary and capricious; and (3) at Plaintiffs' hearing, ONHIR arbitrarily and capriciously attempted to change its "customary use area" policy. The Court addresses each argument in turn.

#### A. The IHO's Credibility Findings Are Supported by Substantial Evidence

"When the decision of an [IHO] rests on a negative credibility evaluation, the [IHO] must make findings on the record and must support those findings by pointing to substantial evidence on the record." *Ceguerra v. Sec'y of Health & Hum. Servs.*, 933 F.2d 735, 738 (9th Cir. 1991) (citation omitted). An IHO's credibility findings are entitled to substantial deference. *De Valle v. I.N.S.*, 901 F.2d 787, 792 (9th Cir. 1990). Nevertheless, the Court will only defer to "credibility findings that are fairly supported by the record and supported by specific and cogent reasons for the rejection of the testimony." *Hossain v. Immigr. & Naturalization Serv.*, 7 Fed. Appx. 760, 760 (9th Cir. 2001). "The IHO may set forward [credibility reasoning] either in the formal credibility determination or in the body of the decision." *Begay v. Off. of Navajo & Hopi Indian Relocation*, No. CV-20-08102-PCT-SMB, 2021 WL 4247919, at *4 (D. Ariz. Sept. 16, 2021). In assessing credibility, an IHO may "adequately find a lack of credibility based on internal inconsistencies in a witness's testimony" or "the totality of the record." *Id.* (citing *N.L.R.B. v. Doral Bldg. Services, Inc.*, 666 F.2d 432, 435 (9th Cir. 1982)).

Here, Plaintiffs challenge the IHO's credibility findings as to Fern and Norman only. The IHO found that Fern was a credible witness about her education and summer employment, but because she "was not specific with any testimony about how she helped with the family's livestock," the IHO found that her "credibility about caring for the family's livestock is very limited." (AR. 365.) For Norman, the IHO found that his

"testimony about his residence and employment are credible but his testimony about the extent or times he helped graze the family's livestock is not credible." (AR. 523.)

In the body of the respective decisions for Fern and Norman, the IHO noted specific evidence in the record that contradicted their claims regarding their grazing activities on HPL. For Fern, the IHO noted: (1) since the age of majority, Fern was involved in activities, such as school and employment, which circumscribed her ability to help graze livestock; (2) the family's flock of sheep that comprised the need to graze on the HPL was significantly reduced through the Livestock Reduction Program, thereby reducing Fern's responsibility to help her mother graze livestock; and (3) a nearby mine's expansion had the effect of reducing the areas on HPL in which the family's livestock could be grazed. (AR. 369–71.) For Noman, the IHO noted: (1) since the age of majority, Norman's time grazing was also circumscribed by school and employment; (2) Norman's testimony about *where* he helped graze the livestock is absent; and (3) as noted for Fern, the Livestock Reduction Program and the expansion of the nearby mine both, respectively, reduced the family's flock of sheep and available grazing area on HPL, thereby reducing Norman's responsibility to help graze. (AR. 527–29.)

These are all specific, cogent reasons supported by substantial evidence in the record for discrediting the testimony of Fern and Norman as it pertained to their claim of continuous livestock grazing on HPL. *See e.g.*, *Daw v. Off. of Navajo & Hopi Indian Relocation*, No. 20-17261, 2021 WL 4938121, at *2 (9th Cir. Oct. 22, 2021) (holding that where "there is ambiguous and conflicting evidence as to whether [plaintiff] continuously used HPL . . . ONHIR was entitled to resolve these ambiguities and conflicts against [plaintiff]"); *see also Kirk v. Off. of Navajo & Hopi Indian Relocation*, 426 F. Supp. 3d 623, 629 (D. Ariz. 2019) (holding that "additional facts regarding [plaintiff's] family circumstances . . . suggest that the witnesses' statements were not credible"). The evidence presented to the IHO was disputed. The IHO is tasked with the responsibility of assessing credibility and in doing so is required to resolve the conflict between Plaintiffs' testimony and other evidence in the record. The IHO's decision is supported by substantial evidence

and the Court may not substitute its opinion on weight to be given to conflicting evidence. *Shaibi v. Berryhill*, 883 F.3d 1101, 1109 (9th Cir. 2017) (citing *Meanel v. Apfel*, 172 F.3d 1111, 1115 (9th Cir. 1999)) (noting that it is a "fundamental principle than an agency, its experts, and [hearing officers] are better positioned to weigh conflicting evidence than a reviewing court").

### B. The IHO's Decision Denying Benefits Is Supported by Substantial Evidence and Is Neither Arbitrary Nor Capricious

Plaintiffs assert that they were entitled to benefits because they were legal residents of the HPL as of December 22, 1974, and each were heads of households at that time. (Doc. 18.) Specifically, Plaintiffs contend that the IHO's finding that they did not satisfy ONHIR's "customary use area" policy is unsupported by substantial evidence and is contrary to the IHO's previous finding of "customary use" by their mother, Mable Benally. (*Id.*) The Court disagrees.

As discussed above, ONHIR's "customary use area" policy recognizes that "proof of the existence of a traditional use area and its *continual, active and substantial use after partition*" is evidence of legal residence. *Begay*, 305 F. Supp. 3d at 1048. The IHO in this case found that Plaintiffs could not qualify as residents under the "customary area use" policy because "the totality of the evidence . . . does not support [Plaintiffs'] claim[s] that [they] should be recognized as [] primary, regular, and consistent user[s] of a traditional use area that partially encompassed any lands on HPL." (AR. 296, 373, 460, 530.) Substantial evidence supports that determination.

First, evidence in the record demonstrates that for each of the Plaintiffs, their time spent grazing livestock on HPL was irregular, sporadic, and casual, circumscribed by school, employment, and marriage. (*See e.g.*, AR. 96, 100, 125–26.) Second, the record also indicates that the Livestock Reduction Program significantly decreased the size of the family's livestock, thereby reducing Plaintiffs' responsibility to assist with grazing. (*See e.g.*, AR. 116.) Furthermore, the expansion of a nearby mine significantly reduced the available grazing land on HPL. (*See e.g.*, AR. 100–01, 116.) Substantial evidence therefore

supports the IHO's finding that Plaintiffs' traditional use of HPL was neither continuous nor substantial. *See Daw*, 2021 WL 4938121, at *2 (affirming IHO's finding of no customary use where evidence in the record contradicts plaintiff's claim of continual livestock grazing on HPL during the relevant period). Moreover, because the IHO's finding was reasonable, the denial of Plaintiffs' benefits was not arbitrary and capricious.

Plaintiffs, however, argue that this finding is inconsistent ONHIR's 2006 decision for their mother, Mable Benally, in which the IHO found that Mable was a legal resident of the HPL through her traditional use of the area. (*See* Doc. 21 at 4–5.) Again, not so.

As a preliminary matter, "while ONHIR must follow its own precedent, this merely requires that the agency appl[y] the law consistently to cases with similar material facts; it does not require the agency find the same facts for different parties, in different proceedings, and based on different evidence." *Stago v. Off. of Navajo & Hopi Indian Relocation*, 562 F. Supp. 3d, 95, 105 (D. Ariz. 2021) (internal quotation marks omitted). Here, after hearing and weighing the evidence, the IHO concluded that each Plaintiff failed to prove that they engaged in traditional activities in a continuous and substantial way such that they would qualify as residents under the "continuous use area" policy. The mere fact the IHO found otherwise for their mother, Mable, does not make the IHO's decision arbitrary and capricious.

Moreover, substantial evidence supports the IHO's determination that the nature of Plaintiffs' traditional activities differed from Mable's. Unlike Plaintiffs, Mable did not attend school, nor was she employed in work that took her away from traditional use area. (AR. 6–13.) Mable was a full-time resident of the Black Mesa area on the NPL and grazed her own livestock on HPL from childhood into adulthood. (*Id.*) In contrast, Plaintiffs' ability to graze livestock was curbed by their engagement in various activities—such as school and non-traditional employment—as well as by the reduction in livestock and available grazing areas on HPL. It was reasonable for the IHO to determine that, unlike their mother, Plaintiffs failed to establish that they were engaged in *substantial and continual* traditional activities on HPL for the relevant period. Thus, Plaintiffs did not

1   establish that they were residents of HPL under the "customary area use" policy.

2   ## C. ONHIR Did Not Attempt To Change Policy

3       Plaintiffs contend ONHIR acted arbitrarily and capriciously by announcing at their

4   hearing that "it was adding new requirements to its customary use area policy—that it be

5   applied only to uneducated, traditional elders who spoke only Navajo, and not their

6   educated, Christian children, who used the same traditional use area for the same purposes

7   that their traditional parents did." (Doc. 17 at 14.) Not so.

8       Plaintiffs direct the Court's attention to the following ONHIR statements made at

9   their hearing:

10              [U]nder the Minnie Wood[ie] concept . . . if a person, an
                elderly Navajo lives a traditional life, and . . . their Customary
11              Use Area extends into both the Navajo and Hopi Partition
                Lands, even if there is no residential structure, Hogan, home,
12              whatever, on the Hopi Partition Lands, if that Navajo applicant
                lives a traditional Navajo life, which involves use of the Hopi
13              Partition Lands for traditional Navajo activities, then that
                applicant is eligible for Certification, despite the absence of a
14              physical residence on the Hopi Partition Lands.

15              So, with respect to these applicants, we have no information as
                of the start of this Hearing that any of these applicants had a
16              physical residence on the Hopi Partition Lands and we have no
                evidence to suggest that, like their mother, they are
17              monolingual Navajo Traditional people living a traditional life.
                [The only] information that we have . . . is that all of the
18              applicants lived more modern lives including working for
                wages or salaries, going to school, things that their mother did
19              not do.

20  (AR. 79–80.)

21      The first part of ONHIR's statement appears to simply be a summary of the agency's

22  *Minnie Woodie* decision. In that decision, ONHIR found that Minnie Woodie, an 84-year-

23  old Navajo woman, was eligible for relocation benefits despite her house being partitioned

24  on the NPL. (AR. 213–19.) ONHIR stated, "[i]t has been a long-standing ruling by [the

25  agency] that, if a customary use area existed as of December 22, 1974, the entire area would

26  be treated as an adverse relocation outcome, even if only part of the customary use area

27  was awarded to the Tribe of which he/she is not a member, so long as there is evidence of

28  continuous use of the *entire* area as of the date of the Act." (AR. 216.) Then, in applying

- 9 -

this rule to Woodie's application, ONHIR found:

> [Woodie] was a legal resident in the Jeddito area, whose family had a customary use area, a portion of which was partitioned for the use of the Hopi Indians. [Woodie] resided in the traditional use area, she used the traditional use area for herself, and she lived a traditional lifestyle, which . . . incorporated grazing areas for the family's livestock that were later partitioned for the Hopi Indians. . . . [Woodie] and her family continued to take their sheep to water around the customary use area, applicant continued to move around the different sheep camps . . . . It is evident that [Woodie] was a legal resident in Jeddito as of the date of passage of the Act. It does not matter that she was enumerated at a homesite later partitioned as part of the Navajo side . . . . [O]n December 22, 1974, her legal residence was at the family's customer use area.

(AR. 213–19.) Thus, ONHIR did not announce a new policy at Plaintiffs' hearing, but merely re-articulated its *Minnie Woodie* decision.

The Court is also not persuaded that the second part of ONHIR's statement at Plaintiffs' hearing was an announcement of a new policy. By noting Plaintiffs' non-traditional lifestyle—including working for wages and going to school—ONHIR was stating reasons for its position that Plaintiffs did not qualify as residents under the "customary area use" policy. Although ONHIR does make note that Plaintiffs are not "monolingual," this stray remark does not amount to a policy announcement. This is demonstrated by the fact that the IHO relied on Plaintiffs' lack of *continual and substantial* livestock grazing on HPL—not Plaintiffs' religion, level of education, or language—in determining that they did not qualify as residents under the "customary area use" policy. And as already determined above, the IHO's finding as to Plaintiffs' customary area use was reasonable and supported by substantial evidence. Thus, the Court finds that ONHIR did not act arbitrarily or capriciously.

## IV.    CONCLUSION

The IHO's decision denying Plaintiffs relocation benefits comports with applicable legal standards, is reasonable, and is supported by substantial evidence.

**IT IS ORDERED** that Plaintiffs' motion for summary judgment (Doc. 17) is **DENIED** and Defendant's cross-motion for summary judgment (Doc. 18) is **GRANTED**.

1    **IT IS FURTHER ORDERED** that the Clerk of the Court shall enter judgment

2  accordingly and terminate this case.

3    Dated this 6th day of October, 2023.

4

5

6

7

8  _____
   Douglas L. Rayes
   United States District Judge

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28